THE PEOPLE, RESPONDENT, *v.* ORTIZ ET AL., APPELLANTS.

APPEAL from the District Court of Guayama.

No. 626.—Decided December 8, 1913.

GAMING—MONTE—DEALER OR BANKER—COMPLAINT.—A complaint alleging that the accused played monte for percentage and for money, one of them acting as dealer and banker and the others betting, states facts sufficient to constitute the offense defined in section 299 of the Penal Code as amended by the Act of March 12, 1908, and Act No. 36 of March 10, 1910.

ID.—POKER—ERRONEOUS TRANSLATION.—Poker was not one of the games expressly prohibited by section 299 of the Penal Code, which section was erroneously translated into Spanish by placing a comma after the word ''stud-horse'' and before the word ''poker'' as though referring to two distinct games instead of one single game called stud-horse poker. The game of poker was added to the list of prohibited games enumerated in section 299 of our Penal Code by the Act of March 12, 1908, amending the said section.

ID.—MONTE—BANKING OR PERCENTAGE GAME.—The game of monte, to which the present case relates, is one of the games specifically enumerated in section 299 of the Penal Code as a banking or percentage game.

ID.—POKER—BANKING OR PERCENTAGE GAME.—The game of poker is included in the statutory prohibition of section 299 of the Penal Code, amended by Act of March 12, 1908, when conducted under the same conditions as any banking or percentage game.

ID.—POKER—CONSTRUCTION OF LAW.—From the amendment of section 299 of the Penal Code by the Act of March 12, 1908, it is deduced that it was the intention of the Legislature to penalize, in addition to the games mentioned in said section, any banking or percentage game conducted under the same conditions as those expressly enumerated therein, and included the game of poker among those expressly prohibited, but only when played under the conditions of a banking or percentage game.

ID.—EVIDENCE—DISCRETION OF COURT.—The trial court, in the exercise of its discretional power, may admit in evidence the cards and money seized after the case for the prosecution has been rested, but the introduction in evidence of these incriminating articles is not necessary, for the offense of playing a prohibited game does not depend upon the seizure of the cards or money used in the game, but upon the fact that the person was playing a prohibited game.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

The appellants did not appear.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

The appeal before us for consideration was taken from a judgment rendered by the District Court of Guayama on May 12 of the present year in a trial *de novo* on appeal, sentencing Carlos B. Ortiz Ledee, one of the accused, to pay a fine of $30 or to undergo imprisonment for 30 days, and the others, namely, Mateo Rosa, Félix Cañedo, Lorenzo Manatou, Modesto Lanaussee, Secundino Sáez, Pedro Acosta, Juan Dones, Juan Vázquez, Miguel Civil León, Hipólito Rodríguez and Quintín Rosa, to a fine of $15 each or 15 days in jail, the costs to be paid by all of the accused.

The case originated in the Municipal Court of Guayama by a sworn complaint, the pertinent part of which reads as follows:

"I, Eduardo G. Torres, Insular policeman, residing at No. —— Morse Street, Arroyo, 30 years of age, charge Carlos B. Ortiz Ledee and others with the offense of gaming in violation of section 299 of the Penal Code, committed in the following manner: That on March 2, 1913, at 1 a. m., in the ward of Guásimas, at the place known as Mangle, of Arroyo, in the municipal judicial district of Guayama, the accused wilfully and maliciously played the game of chance called

monte with cards for percentage and for money, two packs of cards each containing 40 cards and 60 cents in silver, nickel and copper coins having been seized, Carlos B. Ortiz Ledee acting as banker and the others betting, contrary to the law in such case made and provided.''

The appellants have made no oral or written pleading before this court in support of their appeal, but after an examination of the statement of the case we find that they demurred to the complaint on the ground that the facts stated therein did not constitute a public offense and that after the prosecution had rested its case the attorney for the accused moved the court for an acquittal because of the failure to offer in evidence the cards and money seized, they being indispensable evidence to establish the *corpus delicti.*

We have examined the complaint in connection with section 299 of the Penal Code as amended by Act No. 36 of March 10, 1910, and with the doctrine laid down by this court in the cases of *The People* v. *Ramsey et al,* 8 P. R. R., 112; *The People* v. *Ruiz et al.,* 10 P. R. R., 529; *The People v. Guilarte,* 11 P. R. R., 334; *The People* v. *Salcedo,* 13 P. R. R., 238; *The People* v. *Eugenio Benítez Castaño et al.,* 19 P. R. R., 235, and must hold that it contains all the integral elements of the offense charged, for it is stated therein that the accused played monte for money and percentage, Carlos B. Ortiz Ledee acting as dealer or banker and the others betting.

The decision of this court in the case of *The People* v. *Benítez Castaño et al.; supra,* does not favor the appellants.

Section 330 of the Penal Code of California, from which section 299 of our Penal Code was taken and was in force until the Act of March 12, 1908, was enacted, reads as follows:

''Section 330.—Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noir, rondo, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, hokey-pokey, *or any banking or percentage game* played with cards, dice, or any device, for money, checks, credit, or other rep-

resentative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine of not less than one hundred dollars nor not more than five hundred dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.'' (Italics ours.)

And section 299 of our Penal Code, before its amendment, read in English as follows:

''Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor, and shall be punishable by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in jail not exceeding six months, or by both such fine and imprisonment.''

As will be seen, poker is not one of the games expressly prohibited either by the Penal Code of California or by the English text of our code, and we have reproduced in English the said sections from both codes because in the translation made of section 330 of the penal Code of California in the opinion which served as a basis for the decision in the case of *The People* v. *Benítez Castaño et al.* ·the game of poker appears to be expressly forbidden, as it also does in the Spanish text of section 299 of our Penal Code, for the reason that a comma is placed erroneously after the word ''stud-horse'' and before the word ''poker'' as though relating to two distinct games instead of one single game called stud-horse poker. The game of poker was added to the list of prohibited games enumerated in section 299 of our Penal Code by the Act of March 12, 1908, amending the said section.

The game of monte, to which the present action relates, is one of those expressly enumerated as a banking or percent-

age game in the California code as well as in our own, and in that sense has been qualified as forbidden. The game of poker is included in the statutory prohibition when conducted under the same condition as any of the banking or percentage games expressly enumerated in section 299 of our Penal Code as originally enacted, and from this section it may be deduced that it was the intention of the Legislature to penalize, in addition to the games mentioned in the said section, any banking or percentage game which might be conducted under the same conditions as those expressly enumerated. The words "or any banking or percentage game" show this.

In enacting the Act of March 12, 1908, it was the intention of the Legislature to eliminate all doubt which might arise as to whether the game of poker was included in section 299 of our Penal Code when it came under the category of a banking or percentage game, and with that object in view included the game of poker among those expressly prohibited, subject, however, to its being conducted under conditions similar to those of any banking or percentage game.

Act No. 36 of March 10, 1910, amending section 299 of the Penal Code, is subject to the same construction that we have given the said section as originally enacted and afterwards amended by the Act of March 12, 1908.

Regarding the failure to offer in evidence the cards and the money seized, it should be observed that the cards seized by the police were identified by one of the witnesses for the prosecution, other witnesses for the prosecution testifying that from 50 to 60 cents in silver, nickel and copper coins were also seized. Besides, the cards as well as the money seized were admitted as evidence after the prosecution had rested its case, which the court could allow in the exercise of its discretionary power. In any event, the introduction of said incriminating articles in evidence was not necessary as the offense of playing a prohibited game does not depend upon the seizing of cards or money or gaming utensils from a per-

son, but upon the fact that a person has been playing a prohibited game.

Finally, although the witnesses for the prosecution testified that the accused were playing monte on a percentage basis and the witnesses for the defense maintained that the game being played was *brisca,* the lower court decided the conflict in the evidence in favor of The People of Porto Rico and we see no reason why we should disturb its finding.

For the foregoing reasons we are of the opinion that the judgment appealed from should be affirmed.

*Affirmed.*

Justices Wolf, del Toro and Aldrey concurred.
Mr. Justice MacLeary took no part in this decision.